McKinney, J.,
delivered the opinion of the court.
This was an action of ejectment for a lot of ground in the town of Dyersburg.
The jury having been instructed by the court, “that the plaintiff had exhibited no sufficient title to the land in dispute,” found for the defendants: and a new trial having been refused, the plaintiff prosecuted an appeal in error to this court.
The plaintiff claims title under an execution sale and sheriff’s deed. It appears from the record, that on the 28th October, 1839, the plaintiff recovered a judgment in the circuit court of Dyer, against Charles Parrish, for $193 99. Upon this judgment, several executions seem to have been issued, prior to the year 1851, which were returned unsatisfied. It further appears, that in 1851, said Charles Parrish acquired title to a lot in the town of Dyersburg, (being the same sued for in the present action) in the following manner. On the 18th of April, 1850-,, the executors of William Stodard,* by a deed in proper form, and duly executed, conveyed said house and lot to a trustee, to hold the same in trust for the separate use of Eliza M. Parrish, wife of said Charles Parrish, during her natural life; and at the death of Mrs. Parrish, said lot, by the limitation of the deed, was to vest absolutely in said Charles Parrish.
The proof shows, that Mrs. Parrish died “the middle of June, 1851.” And on the 25th of the same month, Charles Parrish sold and conveyed said lot, for *667 the consideration as recited in the deed, of three hundred dollars, to the defendant, Abner Benton; which deed was acknowledged on the 27th of June, 1851. The person who wrote said deed proved that “he understood it to be a fair, honest and bona -fide sale of the lot from Parrish to said Benton.”
The record further shows, that on the 6th day of August, 1851, the plaintiff, Davis, sued out an execution on the before mentioned judgment, against Charles Parrish, tested of the second Monday of June, 1851. This execution was levied, on the 10th of August, on said lot of ground, and the same was regularly sold on the 4th of October, 1851, to the plaintiff, Davis; and on the 6th of October, 1853, the sheriff conveyed the same to him by deed, in due form.
Upon the foregoing state of facts, the question is, which is the better title?
The act of 1831, ch. 90, §7, declares, that a judgment obtained in any court of record in this State, shall be a lien upon the debtor’s land from the time said judgment was rendered: Provided, said judgment is rendered in the county where the debtor resides at the time of its rendition; and provided, an execution is taken out upon said judgment, and said land sold within twelve months after the rendition; .unless the same is prevented by injunction, or writ of error, or appeal in the nature of a writ of error; in which case, if the judgment be affirmed, or the injunction dissolved on motion, or the bill be dismissed on its final hearing, it shall be incumbent on the creditor to issue his execution and sell said land within one year from the *668 time of such, affirmance of the injunction, or dissolution of the judgment, or dismissal of the bill.
It is insisted by the counsel for the defendants, that this act does not, and cannot be construed to apply to the present case. The argument amounts to this: that the lien becomes extinct, after the lapse of twelve months from the rendition of the judgment, except in the specific instances enumerated in the proviso; and cannot, therefore, be revived, so as to attach upon lands acquired by the debtor after the expiration of the year. If the construction of the act of 1831, were a new question, the argument for the defendants has perhaps sufficient plausibility to entitle it to some consideration: but this question has been presented in more than one case. •
The literal construction contended for on behalf of the defendants, would restrict the lien of the judgment to such lands only as the debtor was vested with a legal title to, and were liable to execution at law, at the time of the rendition of the judgment. But it was held by this court, in Greenway vs. Cannon, 3 Hum., 177, 179, that the lien given by the act of 1831, extended to such lands acquired by the defendant, after the rendition of the judgment, as might be levied upon- and sold within the time limited by the statute. And in that case, it is said, that “as the lien is of very short continuance, the reason is strengthened for giving to it all proper scope and operation, as to the subject matter to which it shall be attached.” And in that case the court recognized the correctness of the position, in respect to after-acquired lands, that the lien of the judgment attached eo instanti the legal title passed to *669 the defendant. Again, in Chapron vs. Cassaday, 3 Humph., 663, 661, it is maintained that a judgment will bind after acquired lands of the debtor. And in this case the doctrine is carried further; the court say, we think a just construction of this act of assembly,” (Act of 1831,) “would give in relation to after' acquired lands twelve months from the time the title may accrue to the debtor, within which the creditor may make his lien effectual by a levy and sale.”
We perceive no sound reason why we should not adhere to the construction of the act pf 1831, indicated in the cases aboved cited: on the contrary, we think sound policy requires that we should: And, therefore, we hold the proper construction of the act to be, that the lien given thereby attaches to land acquired by the debtor, after the expiration of twelve months from the rendition of the judgment; and that it continues for the period of one year from the time the title may be acquired; within which period it may be made effectual by a levy and sale of such after acquired lands, and such levy and sale will overreach and avoid any intermediate alienation of the judgment debtor within that period. 1 Swan’s R., 516. Adopting, upon this subject, the views of our predecessors, we deem it unnecessary to pursue the discussion further, for the purpose of showing, that upon general principles and legal analogies and reasons of general policy, the construction adopted is maintainable. It results, from this view, that the title of the plaintiff is valid, and superior to that of the defendants.
The judgment will therefore be reversed, and the case be remanded for a new trial.